# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JESEAN CALLENDER,

    Petitioner,

    v.

WARDEN, ROSS
CORRECTIONAL INSTITUTION,

    Respondent.

Case No. 2:16-cv-1120
JUDGE ALGENON L. MARBLEY
Magistrate Judge King

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition* (Doc. 1), Respondent's *Return of Writ* (Doc. 9), Petitioner's *Motion for Stay and Abeyance* (Doc. 10), Respondent's *Response in Opposition* (Doc. 11), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Petitioner's *Motion for Stay and Abeyance* (Doc. 10) be **DENIED** and that this action be **DISMISSED.**

## Facts and Procedural History

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> The basic facts are not in dispute. On January 17, 2013, a large group of students left Linden–McKinley High School at the end of the school day and walked a few blocks to a nearby McDonald's restaurant. Many of the students made this trip to observe a fight between rival gang members. The two gangs were "PTSQ" and "Squad." Callender was a member of PTSQ and went by the street name "J Dunk." The two participants in the fight were supposed to have been Demonte Walker, a/k/a Monte, and Michael Douglas, a/k/a Magic Mike. Prior to Monte's arrival, Magic Mike and Kaewaun Coleman agreed to engage in a fight. Coleman was a member of Squad. Before Monte and Magic Mike could begin, witnesses saw Callender fire a pistol several times into the crowd.

Coleman was hit by those shots and died as a result. Witnesses claimed that Shyquan Washington, a/k/a Lil Mook, a member of PTSQ, had provided the firearm to Callender immediately before the shooting.

Officers found a 9–millimeter handgun near McDonald's. They also found a spent shell casing from a 9–millimeter round. In December of 2012, Columbus police officers had been called to Lil Mook's residence to investigate a "shots fired" call where they collected shell casings. Subsequent testing by the Columbus Crime Laboratory confirmed that the pistol found at the scene fired all the shell casings found at Lil Mook's residence; the shell casing found at McDonald's; and the bullet recovered from Coleman's corpse.

Callender was indicted on March 19, 2014 on one count of aggravated murder and one count of murder. Both counts contained a three-year firearm specification and a three-year criminal gang specification. On October 24, 2014, after a four-day trial, the jury returned verdicts of guilty as to both aggravated murder and murder and returned verdicts of guilty as to the specifications. On November 6, 2014, the trial court held a sentencing hearing and imposed a term of imprisonment of 30 years to life on Count One of aggravated murder, plus three years for the gun specification and three years for the gang specification. The judgment entry was filed on December 11, 2014, and a notice of appeal was timely filed on January 9, 2015.

*State v. Callender*, No. 15AP-15, 2015 WL 5943504, at *1 (Ohio 10th App. Dist. Oct. 13, 2015).

Petitioner raised the following claims on direct appeal:

> I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF AGGRAVATED MURDER AND MURDER AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY PERMITTING THE STATE TO INTRODUCE HIGHLY PREJUDICIAL EVIDENCE WITHOUT ESTABLISHING A PROPER FOUNDATION.

*Id*. On October 13, 2015, the appellate court affirmed the judgment of the trial court. *Id*. Petitioner did not file a timely appeal from that decision to the Ohio Supreme Court. On February 19, 2016, Petitioner filed a motion for a delayed appeal. (Doc. 9-1, PageID# 174, 177). On April 20, 2016, the Ohio Supreme Court denied the motion for a delayed appeal. *State v. Callender*, 145 Ohio St.3d 1442 (2016).

Meanwhile, on August 18, 2015, Petitioner filed a *pro se* petition for post conviction relief in the state trial court. (PageID# 204). He asserted that his sentence violated the Eighth Amendment, and that he had been denied the effective assistance of counsel because the DNA on the gun and ballistics evidence indicated that the bullet found in the victim did not in fact match the gun. (PageID# 205). On August 28, 2017, the trial court denied the post conviction petition. (PageID# 215). Petitioner apparently did not file an appeal from that decision.

Petitioner indicates that, on November 19, 2016, he submitted the *Petition* to prison officials for mailing. *Petition* (Doc. 1, PageID# 16). He asserts that the trial court improperly permitted admission of YouTube music videos and Facebook photographs (claim one); and that the evidence was constitutionally insufficient to sustain his convictions on aggravated murder and murder, and that these convictions are against the manifest weight of the evidence (claims two, three, and four). Respondent contends that Petitioner's claims are procedurally defaulted or fail to provide a basis for federal habeas relief.

**Motion for Stay and Abeyance**

Petitioner has filed a motion for a stay of these proceedings. According to the Petitioner, he has obtained newly discovered evidence of his actual innocence, *i.e.*, an affidavit from the purported actual assailant acknowledging guilt and indicating that Petitioner had no culpability; Petitioner wishes to present this affidavit to the state courts in a petition for post conviction

relief. Petitioner has not attached the purported affidavit to his motion, and he concedes that he has not yet obtained the affidavit; he represents that, when he does obtain the affidavit, he will pursue state post conviction relief. *Motion for Stay and Abeyance* (Doc. 10).

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. 28 U.S.C. § 2254(b)(1); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Furthermore, federal habeas courts may not entertain "mixed petitions," *i.e.,* petitions that present both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509 (1982). However, federal courts have the discretion to stay a mixed petition in order to permit a petitioner to present any unexhausted claim to the state courts, and then to return to federal court for review of all, now exhausted, claims. *Rhines v. Weber*, 544 U.S. 269 (2005). However, stays under these circumstances should be only sparingly used; stays are not appropriate, for example, when the unexhausted grounds are plainly meritless. *Id*. at 278. A petitioner seeking a stay to permit exhaustion of an unexhausted claim must demonstrate both good cause for having failed to exhaust his state court remedies and a potentially meritorious claim. *Id*. at 277-78.

None of the claims currently before the Court is unexhausted.

> Some courts, including lower courts within the Sixth Circuit, have declined to extend the *Rhines* stay-and-abeyance procedure to petitions, such as this, containing only unexhausted claims. *See, e.g., Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *Hust v. Costello*, 329 F. Supp. 2d 377, 380 (E.D. N.Y. 2004) (and cases cited therein); *Robinson v. Gidley*, No. 2:15cv10572, 2015

WL 1120118, at *2 (E.D. Mich. Mar.11, 2015) (and numerous cases cited therein); *Taylor v. Kelly*, No. 1:13cv2577, 2014 WL 4436595, at *1, *9 (N.D. Ohio Sept.9, 2014) (and numerous cases cited therein); *Secessions v. Warden, Lebanon Corr. Inst*., No. 5:13cv195, 2014 WL 2919186, at *1, *5 (N.D. Ohio June 27, 2014); *Gatlin v. Clipper*, No. 5:13cv2434, 2014 WL 2743208, at *2, *5 (N.D. Ohio June 17, 2014) (and cases cited therein); *Warren v. Warren,* No. 2:13cv11234, 2013 WL 1875948, at *2 (E.D. Mich. May 3, 2013); *Sidibeh v. Buchanan*, No. 2:12cv558, 2012 WL 6568231, at *8 (S.D. Ohio Dec.17, 2012) (King, M.J.) (Report & Recommendation), adopted, 2013 WL 80362 (S.D. Ohio Jan.27, 2013) (Graham, J.); *Mimms, supra*, 2009 WL 890509, at *3. But *cf. Doe v. Jones,* 762 F.3d 1174, 1176–81 (10th Cir. 2014) (holding that the district court had "discretion to consider a *Rhines* stay even though petitioner filed an unmixed petition" in a case where the petitioner had "little chance of exhausting [his] claims in state court and returning to federal court before the limitations period" expired), *cert. denied*, —U.S. — , 135 S.Ct. 1424, 191 L.Ed.2d 386 (2015); *Heleva v. Brooks*, 581 F.3d 187, 191–92 (3d Cir. 2009) (holding that the district court erred in ruling that "*Rhines* confines the availability of stay-and-abeyance solely to mixed petitions" given that in *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005), which was decided one month after *Rhines*, the Supreme Court "sanctioned the use of stay-and-abeyance in a context outside that of mixed petitions" in a case involving the petitioner's "reasonable confusion about state filing requirements"); *Hyman v. Keller*, No. 106652, 2011 WL 3489092, at *10–11 (4th Cir. Aug. 10, 2011) (same); *Dolis v. Chambers*, 454 F.3d 721, 724–25 (7th Cir. 2006) (vacating the dismissal of a habeas petition containing only unexhausted claims and remanding with instructions to consider whether a stay was warranted in case where any future habeas petition would be time-barred). Courts that have held [that] a stay is inappropriate for petitions containing only unexhausted claims have reasoned that (1) the district court lacks jurisdiction over the petition while the petitioner pursues his claims in state court in the absence of "exhausted claims that could stay the petition;" and (2) "if district courts were to stay habeas petitions that were completely unexhausted in order to maintain their timeliness under the AEDPA, federal courts would be turned into a jurisdictional parking lot for unexhausted claims." *Hust*, 329 F. Supp. 2d at 380 (internal citation and quotation marks omitted); *Warren, supra*, 2013 WL 1875948, at *2; *see also United States v. Hickman,* 191 F. App'x 756, 757 (10th Cir. 2006) (denying certificate of appealability in a case where a petition containing only unexhausted claims was dismissed rather than stayed).

5

*Peterson v. Warden, Pickaway Corr. Inst.,* No. 1:14-cv-604, 2015 WL 3970171, at *7 (S.D. Ohio June 30, 2015) (declining to resolve the issue "because there appears to be a conflict among the circuit courts and it does not appear that the Sixth Circuit has weighed in on the issue[.]"); *see also Gaitlin v. Clipper,* No. 5:13CV2434, 2014 WL 2743208, at *2 (N.D. Ohio June 17, 2014) (holding that stay and abeyance procedure does not apply where the petitioner does not present a mixed petition) (citing *Witherspoon v. Howes*, 1:07–CV–981, 2008 WL 3833751 *2 (W.D. Mich. Aug. 13, 2008); *Draheim v. Harry*, No. 1:05–cv–587, 2005 WL 2758089 at *3 (W.D. Mich. Oct.25, 2005)).

This Court need not resolve this apparent conflict because it does not appear that Petitioner's unexhausted claim of actual innocence is potentially meritorious so as to justify a stay. Petitioner has attached no affidavit in support of his motion, and his allegation is utterly without evidentiary support. Moreover, several eyewitnesses identified Petitioner as the shooter.

> Recantation testimony, particularly when it is belatedly submitted, is considered "of little value" and "viewed with great suspicion." *See Carter v. Mitchell*, 443 F.3d 517, 539 (6th Cir. 2006) (and cases cited therein). *See also Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring)) (holding the petitioner had failed to demonstrate a credible claim of actual innocence "under the demanding *Schlup* standard" given that "recanting affidavits are always viewed with 'extreme suspicion' " and "new statements from witnesses years after the crime are inherently suspect" and "are to be viewed with a 'degree of skepticism' "); *Byrd v. Collins*, 209 F.3d 486, 508 n. 16 (6th Cir. 2000)("'Recanting affidavits and witnesses are viewed with extreme suspicion by the courts.'") (quoting *Spence v. Johnson*, 80 F.3d 989, 997 (5th Cir.1996)); *Gray v. Hudson*, 2008 WL 1995362, at *7 (N.D. Ohio May 5, 2008) (Boyko, J.)(stating that "the inherent suspiciousness of the recanting affidavits [of prosecution witnesses] coupled with their late filing more than three years after conviction and the lack of explanation as to why they were filed so late" failed to demonstrate "new reliable evidence" of the petitioner's actual innocence); *Cleveland*, 65 F.Supp.3d at 523 ("[A] recantation must be looked upon with the utmost suspicion")(quoting *Ortega v. Duncan*, 333 F.3d 102, 107 (2nd Cir. 2003)). This is particularly so where a

> "recantation is repudiated and a new one substituted." *Campbell v. Curtis*, 2008 WL 4104346 at *6 (E.D. Mich. Aug. 29, 2008) (quoting *U.S. v. Brown*, 417 F.Supp. 340, 343 (E.D. Pa. 1976)).

*Davis v. Bradshaw*, No. 1:14-cv-2854, 2016 WL 8257676, at *29 (N.D. Ohio June 16, 2016). In view of the substantial evidence of Petitioner's guilt which was presented at his trial, it appears unlikely that any affidavit would provide Petitioner relief. Moreover, a free-standing claim of actual innocence does not provide a basis for federal habeas relief absent a separate constitutional violation. *See Legrone v. Birkett*, 571 Fed.Appx. 417, 421 (6th Cir. 2014) (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993)).

Therefore, the Magistrate Judge **RECOMMENDS** that Petitioner's *Motion for Stay and Abeyance* (Doc. 10) be **DENIED**. The Court will proceed to consider the issues presented by the *Petition*.

**Procedural Default**

Respondent contends that Petitioner's claims are procedurally defaulted. Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982) *(per curiam)* (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later

7

presented to the state courts, "there is a procedural default for purposes of federal habeas...." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state

procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' " *Edwards,* 529 U.S. at 452 (quoting *Murray*, 477 U.S. at 479). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards*, 529 U.S. at 450–51).

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the merits of the procedurally defaulted claim unless "review is needed to prevent a fundamental miscarriage of justice, such as when the

petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray*, 477 U.S. at 495–96).

In claim one, Petitioner alleges that the trial court improperly permitted admission of YouTube music videos and Facebook posts without establishing a proper foundation. In claims two through four, Petitioner alleges that the evidence was constitutionally insufficient to sustain his convictions, and that his convictions are against the manifest weight of the evidence.[1] Petitioner has waived these claims by failing to file a timely appeal of the appellate court's decision to the Ohio Supreme Court.[2] *See Boddie v. Ohio*, No. 2:16-cv-820, 2017 WL 2079836, at *14 (S.D. Ohio May 15, 2017) (citing *Backie v. Moore*, No. 1:13-cv-00507, 2015 WL 2137164, at *11 (N.D. Ohio May 7, 2015) (citing *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)(per curiam)). The Ohio Supreme Court denied Petitioner's motion for a delayed appeal. The United States Court of Appeals for the Sixth Circuit has held that the Ohio Supreme Court's denial of a motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal habeas corpus review. *Bonilla*, 370 F.3d 494. *See also Baker v. Bradshaw*, 495 Fed. Appx. 560, 565 (6th Cir. 2012).

---

[1] Moreover, Petitioner's claim that his convictions are against the manifest weight of the evidence does not provide a basis for federal habeas corpus relief. *See Williams v. Jenkins*, No. 1:15cv00567, 2016 WL 2583803, at *7 (N.D. Ohio Feb. 22, 2016) (citing *Nash v. Eberlin*, 258 Fed.Appx. 761, 765, n.4 (6th Cir. 2007)); Norton v. Sloan, No. 1:16-cv-854, 2016 WL 525561, at *5 (N.D. Ohio Feb. 9, 2017) (citing *Ross v. Pineda*, No. 3:10-cv-391, 2011 WL 1337102, at *3 (S.D. Ohio)) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law."); *see also Taylor v. Warden, Lebanon Correctional Inst.*, No. 2:16-cv-237, 2017 WL 1163858, at *10–11 (S.D. Ohio March 29, 2017) (same) (citations omitted).

[2] Petitioner's claim that the trial court improperly admitted YouTube music videos and Facebook posts into evidence without establishing a proper foundation also fails to provide a basis for relief. A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985).

Petitioner may still secure this Court's review of the merits of his claims if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea,* 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla,* 370 F.3d 498. Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to do so here.

The United States Supreme Court has also held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496. In *Schlup,* the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition. *Id.* at 317. However, a claim of actual innocence is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id.* at 315 (quoting *Herrera,* 506 U.S. at 404).

The actual innocence exception to procedural default allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence – *i.e.,* evidence not

previously presented at trial – would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005). The Court of Appeals for the Sixth Circuit explained this exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter*, 395 F.3d at 589–90 (footnote omitted). Petitioner does not meet these standards here. After an independent review of the record, the Court does not deem this to be so extraordinary a case as to relieve petitioner of his procedural default.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that Petitioner's *Motion for Stay and Abeyance* (Doc. 10) be **DENIED** and that this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                                     *s/ Norah McCann King*
                                                     Norah McCann King
                                                     United States Magistrate Judge

August 24, 2017